**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ANTHONY LECHAHN WOODS,

      Petitioner,

v.                                   Case No. 3:18-cv-1462-TJC-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

**<u>ORDER</u>**

I.  **<u>Status</u>**

      Petitioner, Anthony Lechahn Woods, an inmate of the Florida penal system, initiated this action in the Northern District of Florida by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Doc. 1. The Honorable Gary R. Jones, United States Magistrate Judge, transferred the case to this Court. Doc. 3. Petitioner challenges a state court (Duval County, Florida) judgment of conviction for burglary of a dwelling for which he is serving a sixteen-year term of incarceration as a Habitual Felony Offender, with a fifteen-year minimum mandatory term as a Prison Releasee Reoffender. Respondents filed a Response raising one argument – that the Petition is due to be dismissed with prejudice because it is untimely filed. <u>See</u>

<u>generally</u> Doc. 17 (Resp.).[1] Petitioner replied. <u>See</u> Doc. 21. This case is ripe for review.

## II.   <u>One-Year Limitations Period</u>

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) amended 28 U.S.C. § 2244 by adding the following subsection:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.   The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B)   the date   on   which   the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C)   the   date   on   which   the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

[1] Attached to the Response are several exhibits. The Court cites the exhibits as "Resp. Ex."

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

## III.   Analysis

On December 4, 2013, a jury found Petitioner guilty of burglary of a dwelling. Resp. Ex. A at 56. On January 14, 2014, the trial court adjudicated Petitioner as an HFO and a PRR and sentenced him to a sixteen-year term of incarceration with a fifteen-year minimum mandatory term. Id. at 103-09. With help from appellate counsel, Petitioner sought a direct appeal, and on March 11, 2015, the First District Court of Appeal per curiam affirmed Petitioner's judgment and sentence without a written opinion. Resp. Ex. G. Petitioner then filed a pro se motion for clarification under Florida Rule of Appellate Procedure 9.330. Resp. Ex. H at 2. And the First DCA denied Petitioner's motion for clarification on May 19, 2015. Id. at 1. Petitioner's judgment and sentence

became final ninety days later, on Monday, August 17, 2015.[2] Petitioner's federal one-year statute of limitations began to run the next day, August 18, 2015.

His one-year term ran for eighty days until it was tolled on November 6, 2015, when Petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. Resp. Ex. I at 1-13. Petitioner's one-year remained tolled until April 18, 2017, when the First DCA issued its mandate affirming the trial court's denial of his Rule 3.850 motion. Resp. Ex. J. His statute of limitations resumed the next day, April 19, 2017, and ran for another thirty days until it was tolled on May 19, 2017, when Petitioner filed a Florida Rule of Criminal Procedure 3.800(a) motion to correct illegal sentence. Resp. Ex. K. The trial court denied Petitioner's Rule 3.800(a) motion on July 25, 2017. Resp. Ex. L. Petitioner filed a motion for rehearing, tolling the rendition of the trial court's

---

[2] Generally, the ninety-day time limit for a petitioner to seek certiorari review with the United States Supreme Court begins to run on the day the state appellate court renders its opinion. But Florida Rule of Appellate Procedure 9.020(i) provides that an authorized motion for clarification under Florida Rule of Appellate Procedure 9.330 tolls the rendition of an appellate order or opinion until the motion is "either abandoned or resolved by the filing of a written order." Fla. R. App. P. 9.020(i). Likewise, under United States Supreme Court Rule 13, if the state appellate court entertains a motion for rehearing, the time to file a petition for a writ of certiorari runs from the date of the denial of rehearing. U.S. Sup. Ct. R. 13. Considering these procedural rules in concert, and for purposes of this Order, the Court considers Petitioner's judgment and sentence to be final ninety-days from the date that the First DCA denied Petitioner's motion for clarification. And while Respondents argue that Petitioner's judgment and sentence became final on an earlier date, the Court's use of the later date has no effect on the untimely nature of the Petition.

order until the trial court denied rehearing on October 3, 2017. Resp. Exs. M-N; <u>see also</u> Fla. R. App. P. 9.020(h)(1)(B). Following the rendition of the trial court's order denying Petitioner's Rule 3.800(a) motion, Petitioner had until November 2, 2017 to file a notice of appeal. Petitioner did not file a notice of appeal, and so his one-year statute of limitations resumed the next day, November 3, 2017. Petitioner's one-year then ran untolled for another 255 days until it expired on Monday, July 16, 2018. As such, the Petition, filed on November 30, 2018, is untimely.

Petitioner requests that the Court overlook the time bar because he is entitled to equitable tolling. Doc. 21 at 17-19. "When a prisoner files for habeas corpus relief outside the one-year limitations period, a district court may still entertain the petition if the petitioner establishes that he is entitled to equitable tolling." <u>Damren v. Florida</u>, 776 F.3d 816, 821 (11th Cir. 2015). The United States Supreme Court established a two-prong test for equitable tolling of the one-year limitations period, stating that a petitioner "must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." <u>Lawrence v. Florida</u>, 549 U.S. 327, 336 (2007); <u>see also</u> <u>Brown v. Barrow</u>, 512 F.3d 1304, 1307 (11th Cir. 2008) (noting the Eleventh Circuit "held that an inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence." (citation omitted)). "[E]quitable tolling is an

5

extraordinary remedy" that is "'typically applied sparingly.'" <u>Thomas v. Att'y Gen. of Fla.</u>, 992 F.3d 1162, 1179 (11th Cir. 2021) (quoting <u>Hunter v. Ferrell</u>, 587 F.3d. 1304, 1308 (11th Cir. 2009)).

Here, Petitioner asserts he is entitled to equitable tolling because his one-year was tolled throughout his direct appeal and for the trial court's eleven-month delay in ruling on his Rule 3.850 motion. <u>Id.</u> He also contends he exercised due diligence during that time because he filed "notices of inquiries" and a "mandamus petition." <u>Id.</u> at 19. But in determining that the Petition was untimely filed, the Court considered Petitioner's statute of limitations tolled during his direct appeal and Rule 3.850 proceedings. And even assuming Petitioner's "notices of inquires" exemplified due diligence and that his argument is otherwise persuasive, he does not argue or explain why he allowed 255 untolled days to elapse between the conclusion of his state court postconviction proceedings and the filing of his Petition. As such, under these circumstances, the Court finds Petitioner is not entitled to equitable tolling.

Petitioner also tries to overcome the procedural bar by alleging he is actually innocent of the burglary. Doc. 21 at 20-21. "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations." <u>McQuiggin v. Perkins</u>, 133 S. Ct. 1924, 1928 (2013). To avoid the one-year limitations period based on actual innocence, a petitioner must

"present new reliable evidence that was not presented at trial" and "show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt in light of the new evidence." Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1011 (11th Cir. 2012) (quotations and citations omitted); see Schlup v. Delo, 513 U.S. 298, 327 (1995) (finding that to make a showing of actual innocence, a petitioner must show "that it is more likely than not that no reasonable juror would have found [the p]etitioner guilty beyond a reasonable doubt").

Relying on the one claim he raises in his Petition, Petitioner asserts he is innocent because the trial court limited defense counsel's cross-examination of state witness Officer G.I. Harris. Doc. 21 at 20. At trial, Harris testified that on the day of the burglary, he was called to assist Officer Emerson in investigating the burglary. Resp. Ex. C at 257. Harris explained that when he arrived on scene, Emerson had just apprehended Petitioner and was placing him in the backseat of his patrol car. Id. Harris stated that he then began speaking to Petitioner, during which Petitioner advised Harris that he did not go inside the house but he did take the air conditioning unit off the back porch of the home and dragged the unit from the porch to the neighbor's yard. Id. at 259-60. Petitioner also told Harris that he found sink parts on the ground. Id. at 260.

Defense counsel then advised the trial court that he wished to discredit Harris's testimony and elicit statements that Harris failed to record his

conversation with Petitioner even though it was protocol to record any interviews with burglary suspects. Id. at 262-80. The state objected to defense counsel's request, noting that defense counsel's proffered questioning would open the door to testimony that once officers transported Petitioner to the police station, they did record an interview with Petitioner during which Petitioner invoked his right to remain silent. Id. at 263. The trial court agreed with the state's concern about potential comments on Petitioner's Fifth Amendment right but specifically clarified that it would not limit defense counsel's questioning of Harris. Id. at 276-77. Instead, the trial court cautioned defense counsel that if he questioned Harris about his failure to follow protocol and record his conversation with Petitioner, such questioning would open the door to evidence that a recorded interview with Petitioner was eventually obtained but Petitioner invoked his rights under the Fifth Amendment. Id. at 276. The trial court also advised that the jury would likely wonder why neither the state nor the defense ever introduced the recorded statement as evidence. Id.

After trial, as his sole claim on direct appeal, Petitioner challenged the trial court's purported limitation on Harris's cross-examination. Resp. Ex. E. The state filed an answer brief addressing Petitioner's argument on the merits, asserting that the trial court did not abuse its discretion because it did not limit defense counsel's questioning. Resp. Ex. F. The First DCA per curiam affirmed Petitioner's judgment and sentence. Petitioner now attempts to reiterate that

previously rejected claim to overcome the procedural time bar. But he has not produced exculpatory evidence, trustworthy eyewitness accounts, or critical physical evidence not previously available. He has failed to point to any evidence to show it is more likely than not that no juror, acting reasonably, would have found him guilty beyond a reasonable doubt because of new evidence. Thus, the Court rejects Petitioner's actual innocence argument. The Petition is due to be dismissed as untimely.

Accordingly, it is

**ORDERED AND ADJUDGED**:

1.     The Petition (Doc. 1) and this case are **DISMISSED with prejudice**.

2.     The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.     If Petitioner appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending

motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[3]

   **DONE AND ORDERED** at Jacksonville, Florida, this 6th day of December, 2021.



TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:   Anthony L. Woods, #J14078
       counsel of record

---

[3] The Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.